ALFRED B. ELY & another *vs.* GORDON McKAY & others.

A bill in equity seeking to enforce the conveyance of a patent right to the plaintiff, and alleging that the plaintiff agreed to purchase the same for a certain sum payable partly in cash and partly in obligations of the plaintiff, and that the original memorandum of the agreement erroneously provided that the conveyance should be made upon the payment of the specified sum in cash, and that afterwards a new memorandum of the agreement was made showing that the payment was to be made partly in cash and partly in obligations of the plaintiff, cannot be maintained if it appears in proof that the owner of the patent right never agreed to take the obligations of the plaintiff without security, and that the second memorandum was not executed and delivered as the contract of the parties, and the only offer of performance has been to pay the specified sum partly in cash and partly in obligations of the plaintiff.

If a plaintiff in equity who seeks to enforce the conveyance of a patent right to himself has not, prior to the institution of his suit, done such things as were necessary in order to entitle himself to equitable relief, a general offer in his bill to do and perform everything which the court shall decree he ought to do and perform, will not be sufficient for that purpose, if his bill is not filed until long after the proper time for the performance thereof on his part, and after material changes in the condition of the parties.

BILL IN EQUITY seeking to enforce the conveyance of a patent right to the plaintiffs.

The original bill, which was brought by Ely alone, against McKay and Lyman R. Blake, and sworn to on the 2d of July 1863, alleged, in substance, that Blake was the inventor of an improvement in sewing machines for which he held letters patent of the United States · that Edgar M. Stevens agreed to purchase the same of said Blake, and to pay him therefor the sum of fifty

thousand dollars, to be paid by instalments, partly in cash and the rest in obligations of said Stevens; that thereupon an agreement, hereinafter copied as Exhibit A, was prepared and executed by said Blake, and delivered to Stevens, dated May 9 1859; that said agreement having neglected to specify the modes and times of payment of the said fifty thousand dollars, and Blake having agreed to receive and Stevens to pay five thousand dollars in cash on delivery of the deed, and the rest in notes of Stevens in instalments, an agreement, hereinafter copied as Exhibit B, was reduced to writing and signed by Blake and Stevens, dated June 10, 1859; that both of these agreements were recorded in the patent office on the 24th of June 1859; that both of these agreements were known to McKay; that McKay and Blake confederated together to defraud Stevens, and on the 23d of June 1859 Blake assigned said patent right to McKay; that on the 27th of July 1859 Stevens tendered to Blake five thousand dollars and the notes mentioned in the agreement of June 10th, and notified Blake that he was ready to carry out the terms of his agreement, waiving all preliminary conditions on which he might have insisted under the contract, and Blake declined the tender and refused to convey the patent right to Stevens; that Stevens on the 9th of August 1860 conveyed all his right and interest in the patent right to Ely, and Blake and McKay were notified thereof; and that Blake and McKay refused to relinquish to said Ely their pretended right to the patent. The prayer was, for a decree ordering them to convey the patent to Ely, and an injunction against conveying the same to others, or granting licenses or making or selling any machines under the same.

Exhibit A was as follows:

" Whereas letters patent have been granted by the United States to Lyman R. Blake of Abington in the Commonwealth of Massachusetts, dated July 6th 1858, and numbered 20,775, for a new and useful improvement in machinery for sewing on the soles of boots and shoes, and whereas said Blake is now making improvements therein: Now therefore I, the said Blake, in consideration of one dollar to me paid by Edgar M. Stevens

of Medford in said commonwealth, the receipt of which is hereby acknowledged, and of other valuable considerations by me received, do hereby covenant and agree to and with said Stevens and his legal representatives and assigns that I will convey to said Stevens said invention, letters patent and the improvement therein within three weeks after I have perfected said invention and improvement, so that the same shall not be an infringement upon any other letters patent, upon said Stevens paying to me the sum of fifty thousand dollars. In the event that said Blake and Stevens cannot agree as whether said invention and the improvements thereon are an infringement upon other letters patent, the same shall be referred to two competent experts, one of whom shall be chosen by each party, and, if said experts cannot agree, the same to be referred to a third party selected by said two experts.

" Witness my hand and seal at Boston this ninth day of May 1859.                                   Lyman R. Blake. [Seal.]

" Witness, Josiah W. Hubbard."


Exhibit B was as follows:

" Condishions of the Sail of Blaks Patent Sewing Machien, to E. M. Stevens, of Medford in Massachusetts:

" Now the said Stevens agrees to Pay to the Said Lyman R. Blake, five Thousand Dollars Down on Delivery of the Deeds of Said Patent Sewing Machien, To the Said Stevens. Then the Said Stevens agrees to Give the Said Blake his agreement or his notes to pay to the Said Blake five Thousand Dollars at the end off one year from the date of the Deeds and then Pay Ten Thousand Dollars Perr year untill the Said Blake Resves the Sum of fifty Thousand Dollars.

" Now the Said Blake agrees to ade the Said Stevens all that he Can in Purfecting the Machiens, So that they Can bee Brought into General youse & as a Labour Saving Machine & also Evury Machien Shall Be Marked With the said. L. R. Blaks Name upon it — Now the Said Blake agrees to assygn to the Said Stevens all the improvements that he is Now Making, or May Make apon Machienery for Sewing on Soles tc Boots

& Shoues. Now the Said Blake agrees to Build the Moddle that he has Commenced in his Shop with his New improvements apon it & to apply for Letters Patent as Soon as it Can Conveanitly Be Done

"in Witness My hand & Seal at Abington this 10th day of June 1859          Lyman R. Blake, & seal.

E. M. Stevens, & seal.

" Witness A. Holmes."

The bill was subsequently amended by adding an offer on the part of the plaintiff to do and perform every act and thing which on his part this court shall decree ought to be done and performed to secure to him all the benefits of said contracts of Stevens with Blake, and his right to the patent and improvements; by adding Stevens as a plaintiff, as a party beneficially interested with Ely in the patent right; and by adding several persons as defendants who were shown by the answers of McKay and Blake to be beneficially interested with them in the same.

The answers set forth, among many other things, that at the time of executing the agreement of May 9th 1859 an improvement known as a "cast-off" was contemplated, and the sum of fifty thousand dollars was to be paid within three weeks after the completion thereof; that the "cast-off" was completed on the 20th of said May, and Stevens expressed his satisfaction therewith, but did not within three weeks thereafter, or ever, offer to pay to Blake the said sum of fifty thousand dollars; that by the understanding of the parties as well as by the terms of the agreement said payment was to be made in cash; that on the 10th of June Stevens called on Blake with a paper which he had previously drawn up (Exhibit B) and to induce him to sign it represented that he had seen or was about to see certain persons with reference to their joining with him in the purchase, and that he wished Blake's signature to this paper that he might exhibit the same to them as an informal proposal or statement by Blake of the periods and sums in which he would probably be willing to receive the payment of the fifty thousand dollars

n case the bargain should be consummated, but said paper was to have no binding force on Blake, and Stevens repeatedly assured him that it was entirely informal, and that in case Blake should sign the paper and waive the payment of the full sum of fifty thousand dollars in cash, forty-five thousand dollars should be secured to him by notes of other persons besides Stevens, and Blake accordingly signed said paper relying on said assurances; that in fact Stevens never offered to furnish such security, and he was not possessed of any visible property; that on the 18th of June Stevens expressly renounced to Blake all idea of completing the purchase; that subsequently a sale was made to McKay for seventy thousand dollars, of which eight thousand was payable within sixty days, and the residue from time to time according to the success of the invention; that McKay had no notice of the agreement of June 10th, or of the claim of Stevens, at the time when he completed the purchase, but was informed that Stevens had no claim upon Blake; that the patent purchased of Blake, though of much value, as embodying the principle or idea necessary to the sewing of the soles of boots and shoes to the uppers, was of little value as a working machine, without further improvements; that McKay, without any knowledge of title in Stevens, devoted his time for nearly four years to rendering the machine a practical working machine, and invented improvements, which he secured by letters patent, and finally succeeded in producing a thoroughly practical and successful machine, having expended in all, in so doing, the sum of about one hundred and five thousand dollars; and that he had assigned interests therein to various persons, who were named.

Voluminous evidence was taken before a commissioner appointed by the court, and thereupon the case was reserved for the determination of the whole court; the only facts which proved to be material to the decision being stated in the opinion.

*S. Bartlett & S. H. Phillips*, for the plaintiffs.

*B. R. Curtis & E. Merwin*, for the defendants.

HOAR, J.　The conclusion to which the court have come upon one branch of the case renders it unnecessary to form or express

an opinion upon the other points in it which have been so elab orately discussed. The plaintiffs' bill is based upon the agree ment for the sale of the patent right by Blake to Stevens dated May 9, 1859, (Exhibit A) as modified by the written instrument (Exhibit B) dated June 10, 1859. It contains no aver ment of performance or of readiness to perform the plaintiffs part of the original contract, and throughout insists upon the instrument of June 10, 1859, as valid and obligatory between the parties to it, according to its terms, and as controlling and determining their rights.

By the clear preponderance of the evidence it seems to us that the latter instrument was never executed or intended by the parties as a complete and binding agreement, and that it did not contain a statement of all the material provisions which were designed by them to be included in their contract.

By the original agreement the assignment of the patent was to be made upon the payment of $50,000 in cash. The plaintiffs allege that this was not the true agreement, but that it was intended that the payment should be made by instalments. If this were so, it affords no answer to the defendants' position in relation to the paper of June 10th. By the terms of the latter the provision for a payment by instalments was made; but it stated that these were to be by notes of Stevens, without any stipulation for security for their payment.

The defendants have undertaken to prove, and have proved to our satisfaction, that this was not the true contract; that Blake never agreed to take the notes of Stevens without security; and that the paper was never executed and delivered as the contract of the parties, but was given to Stevens to enable him to show other persons with whom he was dealing that the time for payment had been extended. This appears by the express and positive testimony of Blake himself; by the testimony of Vittum, a witness obviously in the interest of the plaintiffs; by that of Holmes; and is confirmed by the statement of Myers, whose testimony, considering his deafness, and the contradiction between him and Ely, is not perhaps of considerable importance. But the testimony is confirmed by two facts which are entitled

to great weight. The first is, that it is highly improbable that the notes of Stevens, a man of no pecuniary responsibility, would have been taken without security for so large a sum ; and the second, that Stevens, one of the parties to the transaction, was examined as a witness, and not only does not deny the facts to which the others testify, but is not even interrogated upon the subject.

Whether, therefore, the bill be regarded as a bill for the specific performance of a contract, or to enforce an implied trust against a fraudulent purchaser with notice of the plaintiffs' rights, the defence is equally maintained.

As the written instrument of June 10, 1859, was never executed or intended by the parties as a complete and binding agreement between them, and did not contain a statement of all the material provisions which were designed by them to be included in their contract, it needs no citation of authorities to support the conclusion that a court of equity cannot properly lend its aid to enforce it. And the plaintiffs, having constantly set up and by their bill attempted to enforce that instrument, as constituting in connection with the paper marked " Exhibit A " and dated May 9, 1859, the true and perfect contract between the parties, and never having been ready or having offered to perform the contract contained in " Exhibit A," cannot, after such a lapse of time, and after important changes in the condition of the parties in interest, be permitted to fall back upon the original contract, and obtain the aid of a court of equity to receive the benefit of it. They have in effect renounced and abandoned it.

The general offer in the amended bill to do and perform whatever the court shall order, is not sufficient to maintain the plaintiffs' case, when it appears that they never offered to perform, or were ready or able or intended to perform, the true contract between the parties, but on the contrary have continually insisted upon what was not the real agreement.

*Bill dismissed with costs.*